AGNEW, APPELLANT, *v.* PORTER ET AL., APPELLEES.

[Cite as Agnew v. Porter, 18 Ohio App. 2d 128.]

(No. 560—Decided May 5, 1969.)

*Mr. Morton Y. Reeves,* for appellant.
*Messrs. Zelkowitz, Barry & Cullers,* for appellees.

PUTMAN, J. This is an appeal on question of law from a summary judgment rendered by the Court of Common Pleas of Knox County in favor of both defendants who were sued for damages for personal injuries arising out of a motor vehicle collision.

The uncontroverted affidavit of Thomas E. Bartlett is as follows:

"Thomas E. Bartlett, being duly sworn, says that on the night of January 14, 1966, he was employed as a police officer for the city of Mount Vernon.

"The affiant further states that on that same night, while on duty at the police station, he received a telephone call from Patrolman Joseph Palmer who stated that there was fighting at the high school and that additional officers were needed right away to help.

"The affiant further states that on that same night he radioed to the defendant, Calvin Porter, and informed him that there was a large fight or brawl at the high school and that the officers there needed help immediately.

"The affiant further states that a call for assistance

by a fellow officer is considered an emergency and that any officer receiving such a call makes an emergency run.''

The uncontroverted affidavit of the defendant Calvin Porter recites:

''Calvin Porter, being duly sworn, says that he is one of the named defendants in the action and that on the night of January 14, 1966, he was employed as a police officer for the city of Mount Vernon.

''The affiant further states that on that same night he received a radio call from Patrolman Thomas E. Bartlett stating that there was a fight or brawl at the Mount Vernon High School and that the officers there needed help right away.

''The affiant further states that he treated this call to assist an officer in trouble as an emergency call demanding immediate response.

''The affiant further states that he was on Parrott Street when he received this call at a point approximately 250 feet from Newark Road, at which time he immediately accelerated and leaned forward for the switch on the dashboard to turn on the siren and red light; that while leaning forward he began braking but due to the washboard condition of the road lost all braking action and the cruiser began to fishtail; that to control his automobile he placed both hands on the steering wheel before able to turn on the light and siren and because of lack of braking action the car entered the intersection of Parrott Street and Newark Road where a collision occurred.''

Section 701.02, Revised Code, in pertinent parts, reads as follows:

''Any municipal corporation shall be liable in damages for injury or loss to persons or property and for death by wrongful act caused by the negligence of its officers, agents, or servants while engaged in the operation of any vehicles upon the public highways of this state, under the same rules and subject to the same limitations as apply to private corporations for profit, but only when such officer, agent, or servant is engaged upon the business of the municipal corporation.

"The defense that the officer, agent or servant of the municipal corporation was engaged in performing a governmental function, shall be a full defense as to the negligence of:

"(A) Members of the police department engaged in police duties;

"* * *

"Policemen shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle while responding to an emergency call."

### I.

Plaintiff concedes in his brief that "If the city of Mount Vernon were defending this action and the true defendant in this case then we believe that there would be a complete defense to our cause of action. However the city is not defending this cause of action and it is being defended by attorneys representing * * * insurance co. and we do not believe that the Legislature ever intended this defense to extend to insurance companies." Plaintiff urges the court to "take judicial notice" of the identity of the real parties in interest.

We do not reach the merits of this claim, for the reason that this claim is not pleaded.

The doctrine of judicial notice permits, in some instances, proof without evidence, but a party cannot ask the court to take judicial notice of facts in support of issues not pleaded.

The judgment for the city is, therefore, affirmed.

### II.

Plaintiff urges two separate grounds why the facts alleged in the affidavits leave a jury question as to whether the defendant Calvin B. Porter is personally immune from liability.

First, it is claimed that his immunity depends upon compliance with Sections 4511.03, 4511.21, 4511.24 and 4511.45 of the Revised Code, and that he lost his immunity by failing to operate the flashing red light and siren on his police cruiser.

This claim has already been decided against plaintiff by the following cases: *McDermott* v. *Irwin*, 148 Ohio St. 67; *Farish* v. *Springfield*, 109 Ohio App. 228; *Spencer* v. *Hiese*, 107 Ohio App. 505; *Rankin* v. *Sander*, 96 Ohio App. 40.

The plaintiff cites the 1956 case of *Centerville* v. *Benbow*, 102 Ohio App. 333, which held that a village cannot recover for damage to its cruiser where its marshal drove it in violation of the "assured clear distance" provision of Section 4511.21, Revised Code, on an emergency call without sounding "audible signals by bell, siren, or exhaust whistle" as required by Section 4511.24, Revised Code.

We see no conflict between that case and the case at bar. Here we hold the policeman is not personally liable for his negligence under certain circumstances. The court in *Centerville* v. *Benbow* simply held that the city is, under similar facts, barred by his contributory negligence.

Thus the law is that while the policeman is personally immune from liability for his negligence, both he and his employer are barred from recovery by his negligence.

Our holding does not mean that the policeman is not negligent—it means only that he is not personally liable for damages caused by such negligence.

Secondly, plaintiff claims on the authority of *Lingo* v. *Hoekstra*, 176 Ohio St. 417, that reasonable minds could differ on whether a disturbance at a high school basketball game is such an emergency as to grant immunity to a policeman whose negligence imperils life.

We hold this to be a consideration which should be addressed to the Legislature rather than the courts.

The statute has not made the actual existence of an emergency at the place to which an officer is directed immediately to proceed a condition of the immunity.

It has only required that there be an "emergency call" and that he be responding to it.

We distinguish *Lingo* v. *Hoekstra*. There the officer received no "call" either by outcry or radio or telephone message, and the court held the statute not to require it but to include a "call to duty" arising out of facts solely

within his own knowledge even where no one else communicated with him in any way.

We understand the doctrine of *Lingo* v. *Hoekstra* to extend the statutory immunity beyond "calls" from others to include calls to duty arising out of the officer's personal observation. We understand the rule to be that in those latter cases the immunity does not exist if, in fact, the circumstances observed by the officer would not lead a reasonable person standing in the shoes of that officer, knowing what he knew, equipped, trained, educated and experienced as he was, to conclude that what he saw warranted a hazardous or dangerous response.

We hold this requirement to be inapplicable to a call for immediate help from fellow officers.

Any other construction would require as a condition of the immunity that the responding officer cross-examine and "second guess" the officer calling for help. This would defeat the policy leading to the statutory enactment.

The necessity for immunity in cases of emergency calls from others arises out of the very essence of plaintiff's contention. An officer must be able to respond to the calls of others that help is needed immediately without the need to initiate a cross-examination calculated to elicit the operative facts upon which the judgment of urgency is based.

It is the policy of the law to free him from apprehension of liability in case of "false alarm" or cry of "wolf."

This defendant was told that there was a large fight or brawl and that fellow officers needed immediate help. In the words of Rudyard Kipling, it was not his to reason "why?"

We hold that a response by a policeman to a call that his fellow officers need help immediately is, as a matter of law, a response to an emergency call as the term is used in Section 701.02, Revised Code, and that the responding officer is entitled, as a matter of law, to accept the call at face value and has no duty to question the judgment of the officer issuing such a call.

If it is unwise or unfair to load the economic burden of the damage done by this policy upon the innocent users

of the highway, the governmental power to change the policy remains in the hands of the Legislature where the immunity was created.

### III.

In response to questions from the court concerning the absence of reply, the plaintiff has furnished the court with a citation from *Miller* v. *Cohen*, 3 Ohio App. 2d 71, to the effect that in such cases the motion for summary judgment is premature. This point was not assigned as error in this court.

We hold this point to have been waived by the plaintiff proceeding to judgment in the lower court without objection.

On the general subject of waiver in summary judgment cases, see *Perazzo* v. *Dayton Hasty-Tasty Inc.*, 119 Ohio App. 453; *Weiner* v. *Crouch*, 120 Ohio App. 49; *Rukavina* v. *N. Y. Cent. Rd. Co.*, 1 Ohio App. 2d 48.

When the hearing was held on the motion for summary judgment, plaintiff waived oral argument, filed no counter affidavits and submitted a brief to which he attached a police report of the incident out of which the lawsuit arose.

No verification or other affidavit of any nature accompanied the police report. The trial court struck it, and we hold properly so.

The six-page bill of exceptions in this case shows the reasons why the trial court excluded the police report. It contains thorough and workmanlike findings of fact and conclusions of law.

Upon a careful consideration of the assignments of error, bill of exceptions, briefs and oral arguments of the parties, we find no error apparent on the face of the record prejudicial to the substantial rights of the appellant.

All assignments of error are overruled.

*Judgment affirmed.*

Van Nostran, P. J., and Rutherford, J., concur.