**SPENCER, Plaintiff-Appellant, v. HEISE, Defendant-Appellee.**

Ohio Appeals, Tenth District, Franklin County.

No. 5900. Decided November 12, 1958.

Scott M. Knisley, Jack R. Altom, Columbus, for plaintiff-appellant.
John J. Chester, Jr., Robert P. Duncan, William T. Gillie, Asst. City Atty., Columbus, for defendant-appellee.

**OPINION**

Per CURIAM.

This is an appeal from the Court of Common Pleas of Franklin County, Ohio in which Irwin B. Spencer, plaintiff, appellee, herein, brought suit for damages for personal injuries and property damage suffered in a collision on November 25, 1953 of his passenger automobile at the intersection of Civic Center Drive and West Main Street in Columbus, Ohio with a police cruiser owned by the city of Columbus and driven by James Heise, defendant, appellee herein.

It was the claim of Spencer that he was operating his automobile on West Main Street and entered the intersection of Civic Center Drive with a green light in his favor and that Heise, driving a Columbus radio police cruiser, entered the intersection from Civic Center Drive in face of a red light governing traffic on Civic Center Drive, and that the police radio cruiser collided with Spencer's automobile doing substantial damage to it and injuring Spencer. The city of Columbus was dismissed as a party defendant in the court below but no issue appears to have been made of the ruling on this dismissal by Spencer and the notice of appeal names only Heise as defendant.

At the conclusion of all the evidence, the trial court sustained a motion for a directed verdict against the plaintiff. The trial court relied upon the provisions of the final paragraph of §701.02 R. C., which provides as follows:

"Policemen shall not be personally liable for damages for injury or loss to persons or property and for death caused while engaged in the operation of a motor vehicle while responding to an emergency call."

There are three assignments of error which in substance are: (1) the trial court erred in directing a verdict for defendant, Heise; (2) the judgment is contrary to law and (3) the court allegedly erred in not allowing the jury to decide the question, "What is an emergency run?"

One of the difficulties confronting appellant in supporting his argument is that there appears to be no dispute in the evidence whatsoever. Spencer in answer to an interrogatory propounded by counsel for the city of Columbus clearly admitted that the vehicle did collide with Spencer's car at the time and place mentioned in the petition and was a Columbus police cruiser. He also admitted that the police cruiser was being operated by a member of the Columbus Police Department. In response to the third interrogatory he stated he did not know whether the Columbus police officer driving the Columbus police cruiser was on duty or on business for the city of Columbus when the accident occurred.

The record is filled with direct testimony, not in dispute, that Heise was on duty and that he was on an emergency run. It is not disputed that a call had come into police headquarters in Columbus telling of

the discovery of a corpse or a person presumed to be dead along the banks of the Scioto River south of the point where the collision occurred. It is undisputed that the superior officer of Heise directed him to proceed to the scene to begin an immediate investigation of what might be either a death from natural causes, suicide or perhaps even a murder. It is clear and obvious, we believe, that such a call is the greatest form of an emergency. We do not follow or agree with the logic that if the life had fully departed from the body at the time the report was made that the officer hurrying to the scene was not on any emergency call. Prompt and efficient investigation of crime and possible crime is the strongest known deterrent to the commission of other offenses and is in the clear public interest.

It is of course well settled that law enforcement officers deriving their authority from the sovereignty of the state of Ohio are presumed to have performed in such capacity. (See **Ayres v. Woodard, 166 Oh St 138.**)

There is a further presumption, in the absence of evidence to the contrary, that public officers and public authorities have properly performed their duties in a legal and lawful manner and that they did not act illegally or unlawfully. (See **The State, ex rel. Speeth et al v. Carney, 163 Oh St 159.**)

When applied to the facts in the case now before us this presumption is in favor of defendant and against plaintiff and the one against whom such a presumption lies.has the burden to show the contrary.

The rule is stated in **32 O. Jur., 953, Public Officers, Section 93,** as follows:

"No doctrine is better established than that the acts of an officer, within the scope of his powers and authority, are presumed to be rightly and legally performed until the contrary appears; * * *."

See also **32 O. Jur. 75, Section 11,** where it is said:

"A policeman's acts will be presumed to have been performed in his capacity as such officer until such presumption is overcome by sufficient evidence * * *"

Cited in support of the foregoing is the case of **The New York, Chicago & St. Louis Railroad Co. v. Fieback, 87 Oh St 254,** in which the first branch of the syllabus reads as follows:

"A policeman who is appointed and commissioned by the Governor, under §3427 and 3428 R. S. (§§9150 and 9151 GC), although his appointment was upon the application of a railroad company and his salary is paid by such company, is a public officer, deriving his authority directly from the state; and his acts will be presumed to have been performed in his capacity as such officer, until such presumption is overcome by sufficient evidence."

It has been held by the Supreme Court of Ohio that §701.02 **R. C.,** formerly (§3714-1 GC), is constitutional, was not repealed by the Uniform Traffic Act and is a full defense in cases such as this when the officer is responding to an emergency call.

In **McDermott v. Irwin, 148 Oh St 67,** the first two branches of the syllabus are as follows:

"1. Sec. 3714-1 GC, is a constitutional enactment and was not repealed by the enactment of the Uniform Traffic Act (§6307-1 et seq, GC).

"2. Under §3714-1 GC, it is a full defense to an action against a policeman for negligence while engaged in the operation of a motor vehicle that he was at the time of his alleged negligence responding to an emergency call."

The meaning to be given to §701.02 R. C, supra, was discussed in **Rankin v. Sander, 96 Oh Ap 40,** decided by the Court of Appeals of Hamilton County in 1953. In the Rankin case, supra, there was a collision between a privately owned and operated automobile and a vehicle equipped with a red flasher, which was in operation, driven by a police officer of the city of Cincinnati. The defense was that defendant was a police officer of the city of Cincinnati and that he was answering a trouble call received by him by radio directing him to proceed to the specified address.

In the Rankin case, supra, as here, the police officer said his red warning light was flashing and in that case plaintiff admitted the flasher light was in operation while here the plaintiff denies the flasher light was in operation. The opinion then points out that a distinction is drawn in the liability of citizens or acts of their police and fire departments and found that in case of police officers, prior to enactment of §701.02, supra, R. C., the police officer had no such defense against liability for torts committed under color of office and was personally liable for his negligence in performing official duties. Cited in support thereof was **United States Fidelity & Guaranty Co. v. Samuels, 116 Oh St 586.**

In the Rankin case, supra, Matthews, PJ., at pp. 44 and 45 wrote:

"It is against this background that the exemption of firemen and policemen contained in the last sentence of §3714-1 GC, must be interpreted. It will be observed that the governmental function of the fire department as a defense to the municipality is limited to emergencies, whereas, when it is sought to charge the municipality for the acts of a policeman it is a sufficient defense to prove that he was engaged in the routine police duties without proof of any extraordinary circumstances or emergency. Or, perhaps, it could be said that emergencies are normal and routine in the life of a policeman. At any rate, the Legislature, while exempting the municipality from liability upon proof that the policeman was performing police duties at the time, saw fit by the last clause of §3714-1 GC, to grant the policeman a narrower exemption by requiring him to prove that he was engaged at the time in operating the motor vehicle while responding to an emergency call."

The court then held that had the accident occurred while the policeman was engaged in routine patrol duties in his district, he would have been liable for his negligent acts but that because he was on what was described as "a trouble run," that constituted an emergency which gave him the protection contemplated by §701.02 supra, R. C. In this case therefore it becomes necessary to determine whether or not Heise was "in the operation of a motor vhicle while responding to an emergency call."

We have heretofore made reference to the report received at police headquarters and the order given to Heise to proceed to the location where a human body, presumably dead, had been discovered. It appears beyond question that at police headquarters this was interpreted and, we believe rightly so, as an emergency and that Heise was on an emergency call at the time the collision occurred. It was a fact situation which could be the initial discovery of a crime of great seriousness namely, homicide. On the other hand, it may have been a death due to natural causes, accident or suicide. But we do not believe that the police department was wrong in interpreting this report as one calling for prompt action and it follows, in our opinion, that Heise's trip was clearly in the nature of responding to an emergency call. We note that nowhere in the record is there any evidence to the contrary.

For the reasons above set forth it is our opinion that the three assignments of errors are not well taken and must therefore be overruled and the judgment of the court below affirmed at the costs of the appellant.

PETREE, PJ, BRYANT and MILLER, JJ, concur.